THOMAS E. CONROY vs. CITY OF BOSTON.

Suffolk. February 6, 1984. — June 19, 1984.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Boston. Correction Officer. Words,* "Act of violence."

A correctional officer employed by the city of Boston, who injured his knee while chasing an inmate during an escape attempt, was entitled to receive the additional compensation provided by St. 1970, c. 800, to any of certain employees of the city of Boston "who, while in the performance of duty, receives bodily injury resulting from any act of violence of any patient or prisoner and who as a result of such injury is entitled to benefits under" the Workmen's Compensation Act. [218-220]

CIVIL ACTION commenced in the Boston Municipal Court Department on January 21, 1981.

The case was heard by *Grabau,* J.

*Steven Eisenstat,* Assistant Corporation Counsel, for the defendant.

*William H. Murphy* for the plaintiff.

LIACOS, J. On January 21, 1981, the plaintiff commenced this action in the Boston Municipal Court Department seeking judgment against the city of Boston under St. 1970, c. 800. After trial, judgment was entered for the defendant on June 21, 1982. The plaintiff claimed a report to the Appellate Division of the Boston Municipal Court of certain rulings of law made by the trial judge. The Appellate Division ordered that the judgment for the defendant be reversed and a finding for the plaintiff be entered. The defendant appeals from this order of the Appellate Division. We affirm the Appellate Division's order.[1]

---

[1] This appeal is properly before us. Under G. L. c. 231, § 109, an appeal lies to this court from the final decision of the Appellate Division of any

Statute 1970, c. 800, set out in full in the margin,[2] benefits any employee of the city of Boston, other than a member of its police or fire force, "who, while in the performance of duty, receives bodily injury resulting from any act of violence of any patient or prisoner and who as a result of such injury is entitled to benefits" under G. L. c. 152 (Workmen's Compensation Act). It provides that such an employee shall be paid the difference between his weekly cash benefits under workmen's compensation and his regular salary. It is for this difference that Conroy has sued.

The city does not dispute that Conroy was working as a correction officer at the Deer Island house of correction on April 23, 1979, or that he injured his knee on that date while chasing an inmate who was attempting to escape. The parties agreed at trial that Conroy was disabled and that his disability began on July 2, 1980, and was related to his accident of April 23, 1979. They also agreed that Conroy was an employee of the city, that his average weekly wage at the time of his accident

District Court. The decision of the Appellate Division in this case is final. The defendant had no right to appeal to the Superior Court since it could have removed the case to the Superior Court within twenty-five days after service of the complaint and failed to do so. See G. L. c. 231, §§ 97, 104; *Joseph Freedman Co.* v. *North Penn Transfer, Inc.*, 388 Mass. 551, 551 n.1 (1983). The plaintiff waived his right to an appeal to the Superior Court by commencing the action in a District Court. G. L. c. 231, § 103. See *Hudson* v. *Massachusetts Property Ins. Underwriting Ass'n*, 386 Mass. 450, 452 n.2 (1982).

[2] Statute 1970, c. 800, entitled, "An Act regulating the payment of compensation to certain employees of the city of Boston or the county of Suffolk injured in the service of said city or said county," provides: "Notwithstanding the provisions of section sixty-nine of chapter one hundred and fifty-two of the General Laws, any employee of the city of Boston or the county of Suffolk who, while in the performance of duty, receives bodily injury resulting from any act of violence of any patient or prisoner and who as a result of such injury is entitled to benefits under said chapter one hundred and fifty-two, shall be paid the difference between the weekly cash benefits to which he is entitled under said chapter one hundred and fifty-two and his regular salary, without such difference being charged against available sick leave credits, even if the resultant incapacitation may be for a period of less than six days. This act shall not apply to any member of the police or fire force of the city of Boston."

was $444.92, that he had been receiving workmen's compensation benefits of $211.37 a week since July 2, 1980, and that he was continuing to receive them. They have stipulated to the damages to which the plaintiff is entitled, should he be entitled to benefits under St. 1970, c. 800.

The trial judge made the following findings of fact: "I find from all the credible evidence that the plaintiff, Thomas E. Conroy, is not entitled to benefits under Chapter 800 of the Acts of 1970. The injuries he sustained were work-related but did not result from an act of violence perpetrated by an inmate at the Suffolk County House of Correction. Based on all the credible testimony and particularly the accident reports the plaintiff submitted . . . to his superiors, I conclude that Mr. Conroy slipped on wet rocks while chasing the inmate."

At the close of trial, before final arguments, the plaintiff had made six requests for rulings of law. We need not consider in detail the correctness of the judge's rulings on the requests reported to the Appellate Division. It is clear from the judge's findings and rulings that he found for the defendant as a result of his view that an injury caused by slipping on wet rocks while chasing a prisoner is not an injury resulting from an act of violence of a prisoner as required by St. 1970, c. 800. We agree with the Appellate Division that this was error. On the facts found, judgment should have been entered for the plaintiff.

The city's position is that, since there was never any physical force exerted by the escaping prisoner against Conroy, the judge was correct in concluding that the plaintiff's "injuries . . . did not result from an act of violence perpetrated by an inmate" within the meaning of St. 1970, c. 800. The city itself, however, quotes from Webster's first definition of "violence"; that definition, as given by Webster's Third New Int'l Dictionary 2554 (1968), is "exertion of any physical force so as to injure or abuse (as in warfare or in effecting an entrance into a house)." As is apparent from that definition, an exertion of physical force may be an act of violence though it is not directed

against a person.[3] In St. 1970, c. 800, the Legislature referred to "bodily injury resulting from *any* act of violence of any patient or prisoner" (emphasis supplied). It did not limit the application of c. 800 to cases involving acts of violence directed against an employee or accompanied by physical contact between a patient or prisoner and an employee. "Where the language of a statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words." *Mirageas* v. *Massachusetts Bay Transp. Auth.*, 391 Mass. 815, 819 (1984), quoting *Gurley* v. *Commonwealth*, 363 Mass. 595, 598 (1973).[4]

We think that the flight of the inmate from Conroy during the escape attempt constituted an "exertion of . . . physical force so as to . . . abuse."[5] It was an abuse in that it was unlaw-

---

[3] Similarly, Black's Law Dictionary 1408 (5th ed. 1979) defines "violence" as "[u]njust or unwarranted exercise of force, usually with the accompaniment of vehemence, outrage or fury. . . . Physical force unlawfully exercised; abuse of force; that force which is employed against common right, against the laws, and against public liberty. . . . The exertion of any physical force so as to injure, damage or abuse." (Citations omitted.)

[4] The city refers to G. L. c. 41, § 111F, which provides total disability benefits for police officers and firefighters injured in the performance of duty. Section 111F does not require that the injury have resulted from an act of violence. The city argues that since the Legislature placed such a requirement in St. 1970, c. 800, it intended to have c. 800 benefits granted under "more stringent and specific circumstances" than benefits granted under § 111F. The city states that this intent can be satisfied only by construing strictly the requirement of an act of violence as a requirement of a physical act against the employee's person. This statement does not follow logically. Our construction of c. 800 "by the ordinary and approved usage of the language" does not, as the city implies, extend c. 800 benefits to all correction officers otherwise eligible under the chapter who suffer injuries in the performance of duty. *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds,* 382 Mass. 580, 585 (1981). We need not consider the plaintiff's argument that St. 1970, c. 800, like G. L. c. 152 and G. L. c. 41, § 111F, should be interpreted broadly.

[5] We do not reach the question whether every escape or attempted escape by a prisoner constitutes an "exertion of . . . physical force" so as to bring it within the definition of an act of violence. The city suggested at oral argument that if a prisoner walked out of his unlocked cell or escaped by means of a disguise, no exertion of force would be involved. We do not consider such possibilities here.

ful. G. L. c. 268, § 16. See note 3, *supra*. The action of the inmate was therefore an "act of violence." The injury which Conroy suffered while chasing the inmate resulted from this act of violence.[6] Since the judge found all the other conditions necessary for the application of St. 1970, c. 800, Conroy is entitled to benefits under that chapter.

The order of the Appellate Division that the judgment for the defendant be reversed and a finding for the plaintiff be entered in accordance with St. 1970, c. 800, is affirmed.

*So ordered.*

---

[6] The city claims that a definition of "violence" which includes unlawful physical force is too broad. With such a definition, it argues, c. 800 benefits would have to be given to a correction officer who was injured in an automobile accident while searching for an escaped prisoner who was hundreds of miles away. We need not address the question how close the connection between an act of violence and an injury must be for the injury to be said to have "result[ed]" from the act of violence as required by St. 1970, c. 800. Suffice it to say that in the present case, where the plaintiff slipped while chasing the escaping inmate, his injury was clearly a result of the prisoner's flight.